UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:18cr00246(JBA) |
| *v.* | |
| ARCADIO DONES | December 22, 2021 |

**RULING GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE WITH MODIFICATION**

Defendant Arcadio Dones moves for compassionate release under 18 U.S.C. § 3582 (c)(1)(A) on the grounds that the conditions of his imprisonment are "exceptionally harsh," he has not received adequate care or services while imprisoned, and his medical conditions in the context of the COVID-19 pandemic constitute extraordinary and compelling circumstances.  (Def.'s Mem. Of Law in Supp. of Mot. for Amendment of Sentence Pursuant to 18 U.S.C. § 3582 (c)(1)(A) ("Def.'s Mem." [Doc. # 96] at 1.) The Government opposes, arguing that because Mr. Dones has received a two-dose COVID-19 vaccination and receives treatment for his other conditions, he does not present extraordinary and compelling circumstances. (Gov't's Mem. in Opp'n to Def.'s Mot. for Compassionate Release ("Gov't's Opp'n") [Doc. # 97] at 1.) For the reasons that follow, Defendant's motion is GRANTED with modification.

I.    **Background**

Defendant Arcadio Dones was convicted by his guilty plea to Count Four of a six-count Indictment, charging possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi). (Gov't's Opp'n at 1.) Mr. Dones also waived indictment and pleaded guilty to a one-count Information charging unlawful possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*Id.*) On September 17, 2020, Defendant was sentenced to 100 months of imprisonment, followed by four years of supervised release. (Def.'s Mem. at 2; Judgment [Doc. # 86]). Currently incarcerated at the

Draft 4_Dec 14

Hazelton Federal Correctional Institution ("Hazelton FCI") located in West Virginia, Mr. Dones is scheduled to be released from Bureau of Prisons ("BOP") custody on November 2, 2025. *Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc (last accessed December 20, 2021).

Defendant has a lengthy criminal history, in both Puerto Rico and Connecticut, dating back to 1994, when Mr. Dones was convicted in Puerto Rico of Conspiracy to Distribute Controlled Substances and received a six-year sentence at age nineteen. (Presentence Investigation Report ("PSR") [Doc.# 85] ¶ 33.) Thereafter, in 2004, Mr. Dones was convicted in Puerto Rico of Robbery and received a twelve-year sentence at age twenty-nine.[1] (PSR ¶ 34.) In the circumstances of his arrest related to his current conviction, law enforcement located a loaded firearm in a child's lunch bag on the floor in the defendant's living room, potentially endangering the life of his young daughter. (PSR ¶ 10.)

Mr. Dones is forty-seven years old and has many health issues, including obesity, cirrhosis, a solitary kidney, depression, anxiety, latent tuberculosis, asthma, shingles, swelling of the lower leg, periodontic disorder (bleeding gums), gallstones, liver disease, blurred vision, a ventral hernia, a platelet disorder, a full-body rash, and a kidney infection. (Def.'s Mem. at 4-5, 15, 22.) Mr. Dones believes that many of these conditions are not being treated adequately by the BOP and that he remains especially vulnerable to COVID-19 because of his medical history. (*Id.* at 1, 22.)

The rapid spread and dangers of COVID-19 are by now part of our collective knowledge. *See How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last accessed Dec. 20, 2021). However, the

---

[1] Mr. Dones also was convicted in 2012 of Larceny in the Sixth Degree and received an unconditional discharge. (PSR ¶ 36.)

Draft 4_Dec 14

discovery of COVID-19 mutations, including the most recent Omicron Variant, has perpetuated uncertainty. *See Omicron Variant: What You Need to Know*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last accessed Dec. 20, 2021). The Centers for Disease Control and Prevention ("CDC") advises that people with certain conditions, including cancer, chronic kidney disease, chronic lung diseases, dementia or other neurological conditions, diabetes, down syndrome, heart conditions, HIV infection, immunocompromised state, liver disease, overweight and obesity, pregnancy, sickle cell disease or thalamessia, solid organ or blood stem cell transplant, stroke or cerebrovascular disease, or substance use disorder "can be more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Dec. 20, 2021).

Mr. Dones filed his pro se motion for compassionate release [Doc. # 91] on April 19, 2021 before exhausting administrative remedies. The Court appointed counsel on April 23, 2021 and counsel submitted a request for compassionate release to the Warden at Hazelton FCI, which was rejected on May 6, 2021. (Def.'s Mem. at 10.) Upon exhausting administrative remedies, Defendant filed a supplemental memorandum on May 27, 2021 [Doc. # 96], which the Government opposed on June 11, 2021 [Doc. # 97].

As of December 20, 2021, six incarcerated persons at Hazelton FCI have tested positive for COVID-19, and two have died from the virus. *COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus (last accessed Dec. 20, 2021).

## II.   Discussion

### A.  Legal Standard

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides,

the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

Draft 4_Dec 14

> is earlier, may reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that does not
> exceed the unserved portion of the original term of imprisonment), after
> considering the factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that . . . extraordinary and compelling reasons warrant
> such a reduction . . . and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing Commission.

Although incarcerated persons previously could only seek compassionate release upon motion of the BOP, the First Step Act of 2018 amended that provision to permit prisoners to seek relief directly from the courts upon satisfaction of certain exhaustion requirements.

Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the
> community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

Application Note 1 to that Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

But that does not end the inquiry. In "shift[ing] discretion from the [BOP] to the courts," the First Step Act brought about monumental change in an incremental way, paving the way for "the release of thousands of imprisoned people who[] did not need to be incarcerated" by "giving discretion to an appropriate decisionmaker," instead of "mandating more lenient outcomes." *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). By

Draft 4_Dec 14

empowering district courts to reduce sentences and release prisoners, Congress intended to expand, expedite, and improve the process of compassionate release. *Id.* at 235. While a district court's discretion to grant compassionate release motions is extensive, a court cannot find extraordinary and compelling circumstances based on "rehabilitation *alone.*" *Brooker*, 976 F.3d at 237-38.

### B.  Extraordinary and Compelling Reasons

Defendant argues the following bases for a finding of extraordinary and compelling reasons to warrant a reduction in his sentence: (1) the "exceptionally harsh, isolating and restrictive" nature of his imprisonment, (2) the lack of "services, care or support" in his facility, (3) the continuing risk posed by the COVID-19 pandemic, and (4) his "strong rehabilitation." (Def.'s Mem. at 1.) The Government argues that "in light of Mr. Dones' COVID-19 vaccination, the risk factors he has presented are no longer 'extraordinary and compelling reasons'" for relief. (Gov't's Opp'n at 5-10.) The Government further argues that Mr. Dones has been receiving constant and adequate medical care while in BOP custody, pointing to his prescriptions treating nerve pain and the monitoring he has received for his liver condition. (*Id.* at 11.) Finally, the Government notes that the Court previously considered the various risk factors posed by COVID-19 when it sentenced Mr. Dones because he was sentenced during the pandemic. (*Id.* at 12.)

Courts have granted motions for compassionate release based upon the theory that the COVID-19 pandemic has created disproportionately harsh sentences and limited the rehabilitative resources available to incarcerated people. *See United States v. Mcrae*, 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. January 15, 2021) ("In the Court's judgment, a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison."); *see also United States v. Hatcher*, 18-cr-454-10(KPF), 2021 WL 1535310, *2 (S.D.N.Y. April 19, 2021) (granting early release notwithstanding receipt of COVID-19

Draft 4_Dec 14

vaccine because, among other things, defendant "has been unable to receive mental health care, drug abuse treatment, and other important services that the Court envisioned her receiving while incarcerated") *United States v. Sherrod*, No. 19-20139, 21 WL 3473236, at *3 (E.D. Mich. Aug. 6, 2021) (noting that the placement of an incarcerated person in quarantine for administrative convenience was an "extreme" and "disturbing" measure).

Here, Mr. Dones suffers from a litany of serious health complications, including obesity, cirrhosis, solitary kidney, depression, anxiety, latent tuberculosis, asthma, shingles, swelling of the lower leg, periodontic disorder (bleeding gums), gallstones, liver disease, blurred vision, a ventral hernia, a platelet disorder, a full-body rash, and a kidney infection. (Def.'s Mem. at 4-5, 15, 22; Declaration of Dr. Eden Almasude, Ex. D [Doc. 96-4] ¶ 4.].) As the CDC advises, Mr. Dones's obesity is of particular concern with respect to risk of severe COVID-19 infection, even considering Mr. Dones's vaccination status. *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov /coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Dec. 20, 2021).

Mr. Dones provides medical documentation of his various ailments, including the declaration of a Yale-New Haven Hospital Resident, Dr. Eden Almasude [Doc. # 96-4]. Upon review of Mr. Dones's medical records, Dr. Almasude concluded that he has been provided ibuprofen, which he should not have been prescribed given his kidney condition and that he requires more specialized gastroenterology care. (*Id.* ¶ 6.) The Government argues that Dr. Almsude's assessment "cannot be given too much weight because the doctor has not assessed Mr. Dones' medical condition in person and therefore cannot render an opinion as to what type of medications Mr. Dones should be receiving." (Gov't's Opp'n at 11.) Despite an opaque BOP record of medical treatment, it appears that Mr. Dones has received some form of treatment for his medical conditions.

Draft 4_Dec 14

Yet, perhaps most significant is the considerable time that Mr. Dones has been confined in quarantine and his lack of access to rehabilitative services while in custody. Mr. Dones describes much of his time in quarantine as being kept in his cell for almost twenty-four hours a day for weeks. (*Id.* at 12.) Even when he was not subject to quarantine, Mr. Dones was not allowed out of his cell for more than sixty minutes per day. (*Id.*) What is more, he reports receiving no drug rehabilitation counseling, no vocational training, no English language instruction—no programming or training whatsoever—since the pandemic began. (*Id.* at 13.) These conditions of confinement are extraordinary and are practically a form of solitary confinement. *See, e.g.*, *Sherrod*, 21 WL 3473236, at *3.

Thus, the Court finds that the extraordinarily punitive conditions and the lack of rehabilitative services available to him, in conjunction with his health risks, support a finding of extraordinary and compelling circumstances that Mr. Dones faces.[2]

### C.  Section 3553(a) Factors

Although Mr. Dones has presented extraordinary and compelling circumstances, the Court must also consider the § 3553(a) factors concerning the relief of release which he seeks. Mr. Dones argues that the increased hardship that COVID-19 placed on his term and conditions of imprisonment warrants a sentence reduction, which still reflects the seriousness of his offense and promotes deterrence. (Def.'s Mem. at 24-25). He points to his "clean disciplinary record" during his approximately eleven months at FCI Hazelton, and notes that before he was sentenced, he only had a "minor incident . . . involving his objection to changing cellmates." (*Id.* at 24.) To demonstrate his rehabilitation, he offers letters of

---

[2] The Government's argument that Mr. Dones cannot show extraordinary and compelling circumstances due in part to the COVID-19 pandemic because he was sentenced during the pandemic is unavailing. The constant variable in the COVID-19 pandemic is that it is an evolving phenomenon. Moreover, Defendant's conditions of incarceration have not been as the Court envisioned at sentencing. For example, Defendant has not received the rehabilitative services that the Court recommended. (*See* Sentencing Tr. [Doc. # 90] at 26.) Thus, the mere fact of sentencing in the context of the COVID-19 pandemic cannot act as a bar to revisiting Defendant's sentence. *See Hatcher*, 2021 WL 1535310 at *2.

Draft 4_Dec 14

support from his sister and his friend. (*See* Ex. 2, Def.'s Mem. in Reply to Gov't's Opp'n Brief and in Further Supp. of Def.'s Mot. for Amendment of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Def.'s Reply") [Doc. # 100-1] at 1-9.) His proposed release plan is to live with his sister, who is willing "to facilitate any attendance the Court should desire at, for example, drug court or rehabilitation programs." (*Id.*) Defendant also suggests that home confinement is an available avenue for his further confinement. (*Id.*)

The Government contends that the § 3553(a) factors weigh against a reduction in Mr. Dones's sentence, as there is a need to further the deterrence goals of his sentence and protect the public. (Gov't's Opp'n at 12-13.) Specifically, the Government argues that given Mr. Dones's criminal history, sentence reduction is inappropriate because his previous sentences have "not dissuaded Mr. Dones from engaging in criminal conduct." (*Id.* at 13.)

Under § 3553(a), the Court seeks to impose a sentence that is "sufficient, but not greater than necessary" to

> reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* The Court must also determine if Defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13; *see* 18 U.S.C. § 3582(c)(1)(A).

Having considered the § 3553(a) factors, the Court concludes that immediate release to home confinement is inappropriate. It is true that Mr. Dones has maintained a clean disciplinary record while at FCI Hazelton and has the support of his sister and good friend. (*See* Ex. 2, Def.'s Reply at 1-9.) However, these developments must be considered against the factors supporting his sentence. In view of the deterrence goals of his sentence, Mr. Dones has failed to demonstrate how home confinement would not present a risk to the public upon release, particularly given his record of previous convictions. Moreover, it does not appear

Draft 4_Dec 14

that Mr. Dones has meaningfully developed a plan for how he will support himself and acquire the medical attention that he needs if released. Unfortunately, he has not had many opportunities to participate in rehabilitative programs thus far, calling into question his readiness for release. Finally, Mr. Dones has served only thirty-eight months of the 100-month sentence he was given. Although the Court recognizes that the thirty-eight months for which he has been imprisoned have been under conditions harsher than that typically contemplated, Mr. Dones has not persuaded the Court that the deterrence and public safety goals underlying his sentence—which had not been successful in the past—have been achieved.

While release to home confinement is not proper at this time, the Court remains concerned about Mr. Dones's health and the conditions of his confinement. The thirty-eight months of incarceration, largely in isolation and without rehabilitative services, have dealt Mr. Dones a punishment greater than what was contemplated at the time that his 100-month sentence was imposed. Therefore, the Court will reduce Mr. Dones's sentence to a term of sixty months to reflect the extraordinary conditions to which he has been subjected. In this period, he can pursue his rehabilitation, including by his own efforts, and develop a comprehensive release plan. His first six months on supervised release will be on home detention with location monitoring. The remaining supervision conditions are unchanged.

## III.   Conclusion

For the foregoing reasons, Defendant's Motion for Compassionate Release [Doc. # 91] is GRANTED with modification.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22nd day of December 2021.